*882 OPINION.
SMITH:
The first question presented by this proceeding is the fair value of 14,700 shares of common stock (the total issue outstanding) of E. W. Edwards & Son at the date of the death of the decedent on May 26, 1929. These shares were returned by the petitioners as having a fair market value at the date of death of $310 per share. This isi the amount at which they were appraised by the two appraisers appointed by the Surrogate’s Court. The petitioners now contend that the fair market value of the shares on May 26, 1929, the date of the death of the decedent was not in excess of $200 per share.
One of the witnesses for the petitioners in this proceeding was Elmer T. Eshehnan, one of the appraisers appointed by the Surrogate’s Court. He testified that in appraising the stock of E. W. Edwards & Son for probate purposes the $310 per share value was not based on the “ fair market value ”, but upon “ the value ”; that “ fair value ” is what a thing is worth; that “ market value ” is what you can sell a thing for; that a thing is worth a little more than market value, that is “ unless it is some particular thing somebody wants.”
We are of opinion that the distinction sought to be made by the witness between “ fair value ” and “ fair market value ” is not valid. Section 302 of the Revenue Act of 1926 provides: “ The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.” In article 13 of Regulations 70 (1929 edition) the respondent has provided: “The fair *883 market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell.” But we do not understand from the witness’ testimony that his appraisal was on an essentially different basis from that provided for by the law and regulations. There is nothing in the witness’ testimony that would warrant a finding that the appraised value was different from the price at which 14,700 shares of common stock “ would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell.”
From a consideration of all of the evidence introduced in this proceeding it is apparent that the present claim of petitioners that the fair market value of the shares of stock of E. W. Edwards & Son on May 26, 1929, the date of the death of the decedent, was less than $310 per share is predicated in large part upon hindsight. There were no facts before the appraisers or before the petitioners at the time they filed the estate tax return showing that the fair market value of the shares was less than $310 per share. The operating losses of subsequent years could not be foreseen as at the date of the death of the decedent. The taxing statute requires the inclusion in gross income of the value of property possessed by the decedent “ at the time of his death.” The petitioners introduced no evidence which proves that the fair market value of the shares was less than $310 per share. The determination of the respondent that that value was $310 per share will not therefore be disturbed.
The second question is whether there should be included in the gross estate the proceeds of a life insurance policy taken out by the decedent in 1918 on his own life. The beneficiary named in the policy is E. W. Edwards & Son. The insured had the right, however, to change the beneficiary and he exercised such right on September 20, 1920, and designated and appointed his wife, Caroline W. Edwards, as his beneficiary “ if living; if not, to Insured’s Estate.” In making such designation the insured did not reserve any right further to change the beneficiary. It follows therefrom that the insured did not at the time of his death have any right further to change the beneficiary. David A. Reed et al., Executors, 24 B. T. A. 166. Cf. Sampson v. United States, 1 Fed. Supp. 95.
The respondent contends, however, that whether or not the insured had the right to change the beneficiary the proceeds of the policy are includable in the gross estate, since the decedent up to the date of death had the right to surrender the policy and receive cash therefor, or to pledge it for loans equal to the surrender value, and since the $40,000 exempt insurance permitted the estate under section 302 (g) of the Eevenue Act of 1926 was exhausted on other *884 policies on the life of the insured payable to other beneficiaries than the executors.
The question presented here is substantially the same as that which was considered by the court in Sampson v. United States, supra, and in Edith Hug gard Sharp et al., Executors, 30 B. T. A. 532. In both of these cases proceeds of insurance policies were held to be includable in the gross estate. In the last named case we exhaustively considered the decisions of the Board and of the courts bearing upon this point and set forth the reasons for our conclusions. In accordance therewith the action of the respondent in including the proceeds of the insurance policy in question in the gross estate of the decedent is sustained.
Keviewed by the Board.

Judgment will be entered wnder Buie 50-

Murdock and McMahoN concur in the result.
YaN FossaN concurs only in the result.